IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 08-cv-01485-CMA

COREY WOODARD,

      Petitioner,

v.

SUSAN JONES, Warden, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON PETITION FOR HABEAS CORPUS

---

      This matter is before the Court on Petitioner Corey Woodard's Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Doc. # 1).  Respondents answered the Petition (Doc. # 16), and Petitioner filed a Traverse (Doc. # 18).  After reviewing the pertinent portions of the record in this case including the Petition, the Answer, the Traverse, and the state court record, the Court concludes that the Petition should be denied.

I.    Background

      On April 22, 2002, Petitioner and co-defendants Chaddrick Thomas and Hosea Sullivan were charged in El Paso County District Court (the "trial court") with two counts of murder in the first degree and one count of conspiracy to commit murder in the first

1

degree.[1]  After a preliminary hearing, the trial court dismissed the first count of murder,

for the death of Zaner Hicks, as well as the count of conspiracy to commit murder.  Mr.

Thomas was then tried separately, but Petitioner and Mr. Sullivan were tried jointly for

the murder of Michael Armstead.  The charges stemmed from allegations that, after an

argument with three other men, the Petitioner, Mr. Thomas and Mr. Sullivan opened fire

on the men, killing two of them.  After a jury trial, Petitioner was acquitted of first degree

murder, but convicted on the lesser charge of second degree murder.  On April 25,

2005, the trial court sentenced Petitioner to a prison term of forty-four years.

Petitioner filed his direct appeal with the Colorado Court of Appeals ("CCA") on

September 28, 2005, raising the following issues: (1) the trial court erred in refusing to

tender lesser included defenses to the jury; (2) the trial court erred in failing to sever

Petitioner's trial from Mr. Sullivan's trial; (3) the trial court erred in failing to permit

impeachment of the State's witnesses based on their gang affiliation; (4) the trial court

erred in failing to suppress the out-of-court identification of Petitioner; and (5) the

cumulative rulings of the trial court deprived the Petitioner of his right to a fair trial.  The

CCA denied Petitioner's claims and affirmed his conviction on March 8, 2007.  *See*

*People v. Woodard*, No. 03CA1109 (Colo. App. Mar. 8, 2007) (unpublished decision)

(Doc. # 6 at Ex. D).  Petitioner filed a petition for rehearing on March 21, 2007, *id.* at Ex.

E, which was denied on April 12, 2007, *id.* at Ex. F.  Petitioner then filed a petition for

writ of certiorari on May 11, 2007, *id.* at Ex. G, which was denied on July 16, 2007, *id.* at

Ex. H.

---

[1]This general introductory background is taken from the statement of facts in the
Petitioner's opening brief on direct appeal (Doc. # 16 at Exhibit A, p. 6-7).

Represented by counsel, Petitioner then filed instant petition for habeas corpus on July 15, 2008, arguing that: (1) the trial court erred in refusing to tender lesser included instructions to the jury; (2) the trial court erred in refusing to sever Petitioner's trial from Mr. Sullivan's trial; (3) the trial court erred in failing to permit impeachment of the State's witnesses based upon their gang affiliation; (4) the trial court erred in failing to suppress in-court and out-of-court identification of Petitioner; and (5) the trial court's rulings deprived Petitioner of a fair trial.

On July 23, 2008, Magistrate Judge Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state court remedies (Doc. # 3).  Respondents filed their pre-answer response on August 7, 2008, asserting that several of Petitioner's claims were unexhausted and/or procedurally defaulted (Doc. # 6). Petitioner filed a reply (Doc. # 7) and an amended reply (Doc. # 10).  Without addressing Respondents' affirmative defenses, Magistrate Judge Boland found that the case was not appropriate for summary dismissal and ordered it drawn to a district judge on December 18, 2008 (Doc. # 11).

II.     Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in

3

federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review.  *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction

4

became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*.  Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry

pursuant to § 2254(d)(1).  *See id*. at 1018.  If a clearly established rule of federal law is

implicated, the Court must determine whether the state court's decision was contrary to

or an unreasonable application of that clearly established rule of federal law.  *See*

*Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  *Id*. at
> 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a

5

> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).

6

Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id.*

III.    Discussion

As a preliminary matter, Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d). However, Respondents argue that several of Petitioner's claims are unexhausted and/or procedurally defaulted.

1.  Exhaustion and Procedural Default

Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the petitioner's rights. *See O'Sullivan*, 526 U.S. at 838; *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). A claim has been exhausted when it has been "fairly presented" to the state court. *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever*, 36 F.3d at 1534. Reference to broad federal rights such as due process, without also alerting the state courts to the particular analysis developed by the Supreme Court for a specific violation, is

7

insufficient to fairly present a federal constitutional question to the state courts. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996). That is, a petitioner does not fairly present a constitutional claim to the state courts merely because "all the facts necessary to support the federal claim" were before the state courts, or because a "somewhat similar" claim was brought in the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Instead, a petitioner must have presented a "virtually identical" claim. *Duncan v. Henry,* 513 U.S. 364, 366 (1995) (per curiam) (finding that "mere similarity" of claims is insufficient to exhaust).

Respondents argue that claims two and three are procedurally defaulted. A federal court sitting in habeas review will not consider issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749-50. "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). For the state ground to be adequate, it must be "'strictly or regularly followed'" and "applied 'evenhandedly to all similar claims.'" *Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir. 1998) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).

a. Claim Two

In his second claim, Petitioner asserts that the trial court erred in denying the motion to sever his trial from Mr. Sullivan's trial. In addressing this claim, the appellate court found the following:

A defendant seeking appellate review of the trial court's denial of a

8

> motion for severance must renew the severance motion during the trial.
> Failure to do so constitutes a waiver of any objection to the joint trial.
> <u>People v. Aalbu</u>, 696 P.2d 796, 806 (Colo. 1985).  Here, because
> defendant did not renew his motion to sever during trial, this issue was
> not preserved for appeal.

(Doc. # 6 at Ex. 5, p. 7).

Respondents argue that the appellate court's "reliance on the waiver rule from *Aalbu* is an adequate an [sic] independent state ground for rejecting Woodard's challenge to the trial court's ruling on his severance motion." (Doc. # 6 at 10).  In *Aalbu*, the Colorado Supreme Court found that, "[t]he purpose of the renewal motion is to alert the court to the necessity of reconsidering its original decision in light of the evidence presented at trial and to permit the defendant to reevaluate the issue of prejudice and to elect to proceed with a consolidated trial despite the risk of prejudice."  696 P.2d at 806 (internal quotations omitted).

The appellate court's reliance on *Aalbu* to deny Petitioner's second claim was based on state law rather than federal law, and therefore, satisfies the independence prong of the procedural default test.  *English*, 146 F.3d at 1259.  Further, the CCA has applied the doctrine of waiver against other defendants who have failed to renew their motions to sever during trial.  *See, e.g., People v. Cousins*, 181 P.3d 365, 374 (Colo. App. 2007); *People v. Carlson*, 119 P.3d 491, 493 (Colo. App. 2004); *People v. Braley*, 879 P.2d 410, 414 (Colo. App. 1993); *People v. Weese*, 753 P.2d 778, 779 (Colo. App. 1987).  Therefore, the Court finds that Petitioner's first claim was denied by the appellate court on an adequate and independent state ground.  *See Duvall*, 139 F.3d at 797.  Moreover, Petitioner does not deny that the Colorado procedural rule set forth in *Aalbu* is an independent and adequate state procedural ground (Doc. # 10 at 2).  Instead,

Petitioner argues that he has cause for failure to comply with this rule, asserting that "counsel's failure to properly renew his motion to sever represents substandard performance by an experienced trial counsel." *Id.* at 2-3.  Here, Petitioner apparently argues that ineffective assistance of trial counsel was the cause of his failure to comply with the state procedural rule.  While it is true that deficient performance of counsel may constitute "cause" for purposes of procedural default, *Murray v. Carrier*, 477 U.S. 478, 486-87 (1986), "[n]ot just any deficiency in counsel's performance" will constitute "cause" for a default; instead, the assistance "must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

In *Edwards*, the Supreme Court found that "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim."  529 U.S. at 451 (emphasis omitted).  As a result, an ineffective assistance of counsel claim must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id.* at 452 (quoting *Murray*, 477 U.S. at 489).  If the ineffective assistance claim is procedurally defaulted, it cannot be used to establish "cause" excusing procedural default of the other constitutional claim, unless the defendant has also established "cause" excusing default of the ineffective assistance of counsel claim. *Id.* at 453; *see also Spears v. Mullin*, 343 F.3d 1215, 1256 (10th Cir. 2003); *Johnson v. Gibson*, 254 F.3d 1155, 1159-60 (10th Cir. 2001).  Nothing before the Court demonstrates that Petitioner has raised an ineffective assistance of counsel claim in the state courts.  Nor has Petitioner attempted to show "cause" for his failure to raise his ineffective assistance claim in Colorado state court.  Petitioner, therefore, cannot establish "cause" excusing

10

procedural default on the issue of whether the trial court erred in failing to sever his trial from that of his co-defendant.  *See Edwards*, 529 U.S. at 451-53.

Finally, in his Traverse, citing *Coleman*, 501 U.S. 772, Petitioner asserts that his procedural default can be overcome based upon the "miscarriage of justice" exception (Doc. # 16 at 3).  The fundamental miscarriage of justice test is the far more stringent exception applied to excuse procedural default.  It is an "extremely narrow exception, implicated only in an extraordinary case, 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (quoting *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993)).  To invoke a fundamental miscarriage of justice exception, a petitioner "must provide[] the court with a colorable showing of factual innocence." *Beavers v. Saffle*, 216 F.3d 918, 928 n. 3 (10th Cir. 2000) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).  Here, Petitioner has not made a "colorable showing of factual innocence"; instead, he asserts little more than that "he has maintained his innocence to the state charge of second degree murder," and that the murder was committed in self-defense (Doc. # 18 at 3).  The Court finds no factual allegations supporting Petitioner's claim that would sustain invoking the narrow miscarriage of justice exception to procedural default.

Accordingly, the Court finds and concludes that Petitioner's second claim is procedurally defaulted and must be dismissed.

b.  Claim Three

In his third claim, Petitioner asserts that the trial court erred in failing to permit impeachment of the State's witnesses based upon their gang affiliation, in violation of his Sixth Amendment right to confrontation (Doc. # 1 at 5).  Petitioner contends that his

defense at trial was based upon the premise that he was defending himself against "gun carrying gang members" when the incident occurred.  *Id.* at 24.  He argues that, prior to trial, he requested access to police "gang files" of certain witnesses, as well as the victims, but that "the trial court ruled that the interest of the police department in sealing the files outweighed the Applicant's interest in accessing them."  *Id.*  As such, he contends that "[t]he court's improper ruling . . . that 'gang evidence is not relevant in this case' [was] in direct contradiction to the circumstances surrounding the violence that erupted and was initiated by the victims."  *Id.* at 26.

In addressing this claim, the appellate court found the following:

> Defendant argues that the trial court erred by not allowing discovery of victim and witness gang files.  We disagree.

> In a pretrial motion, defense counsel requested gang files on numerous individuals, arguing that the information in the files would be relevant to show witness motive to testify and bias.

> The trial court conducted an in camera review of the files. Applying the balancing test in <u>Martinelli</u>, the court denied the motion. <u>See Martinelli v. Dist. Court</u>, 199 Colo. 163, 612 P.2d 1083 (1980).

> On appeal, defendant argues that information in the gang files would be relevant under <u>CRE</u> 404(a)(2) to infer that the victim was the initial aggressor and that defendant acted reasonably in self-defense. However, because it is not apparent that defendant argued this theory of relevance [in trial court], we decline to address it here.  <u>See People v. Russom</u>, 107 P.3d 986, 991 (Colo. App. 2004).

(Doc. # 6 at Ex. D, p. 4-5).  Respondents argue that the appellate court's decision not to address this argument because it was not previously presented in the lower court is an independent and adequate state ground for rejecting Petitioner's claim (Doc. # 6 at 16). The *Russom* case stands for the proposition that an issue raised for the first time on appeal will not be addressed by the appellate court.  107 P.3d at 991.  The appellate

12

court's reliance on *Russom* to deny Petitioner's third claim was based on state law rather than federal law, and therefore, satisfies the independence prong of the test. *English*, 146 F.3d at 1259.  Further, the CCA has applied this doctrine against other defendants who have failed to raise issues in state court that they attempt to raise on appeal.  *See, e.g., People v. Rogers*, 68 P.3d 486, 489 (Colo. App. 2002); *People v. Young*, 987 P.2d 889, 893 (Colo. App. 1999).  Therefore, the Court finds that Petitioner's third claim was denied by the appellate court on an adequate and independent state ground.  *See Duvall*, 139 F.3d at 797.

Petitioner does not deny that the Colorado procedural rule set forth in *Russom* is an independent and adequate state procedural ground, but again asserts that counsel's ineffective assistance at trial is cause for his failure to comply with this rule (Doc. # 10 at 4-6).  However, as set forth above, an ineffective assistance of counsel claim must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'"  *Edwards*, 529 U.S. at 452 (quoting *Murray*, 477 U.S. at 489).  Here, again, Petitioner has not demonstrated that he raised an ineffective assistance of counsel claim in the state courts, nor has he attempted to show "cause" for his failure to raise his ineffective assistance claim in Colorado state court.  Petitioner, therefore, cannot establish "cause" excusing procedural default on the issue of whether the trial court erred in failing to allow impeachment of the witnesses based upon their possible gang affiliation.  *See Edwards*, 529 U.S. at 451-53.  Further, although Petitioner again asserts that the fundamental miscarriage of justice exception applies to this claim, he likewise fails to provide factual allegations supporting this claim such that the Court could sustain invoking the narrow miscarriage of justice exception to

13

procedural default (Doc. # 18 at 4-5).

Accordingly, the Court finds and concludes that Petitioner's third claim is procedurally defaulted and must be dismissed.

### c. Claim Four

In his fourth claim, Petitioner argues that the trial court erred in failing to suppress Jerry Armstead's in-court and out-of-court identification of Petitioner, in violation of his Sixth and Fourteenth Amendment rights (Doc. # 1 at 28).  Respondents assert that this claim is only partially exhausted (Doc. # 16 at 16).  Respondents contend that Petitioner's fourth claim contains three sub-claims: (1) the pre-trial photo identification process was unduly suggestive; (2) pre-trial publicity exacerbated the suggestiveness of the photo lineup; and (3) pre-trial publicity tainted the in-court identification of Petitioner by certain witnesses.  *Id.*  Respondents argue that the second and third sub-claims are unexhausted and procedurally defaulted because he failed to support these claims in state court "with record citations or authorities analyzing the impact of publicity on the Federal Constitutional Due Process right to identifications untainted by unduly suggestive procedures."  *Id.* at 18.  However, the issue here is not whether Petitioner's claims were well-supported in state court, but whether Petitioner raised the same claims and facts in state court that he now raises in this court.  *Duncan*, 513 U.S. at 366.

Upon review of Petitioner's opening brief in appellate court, the Court finds that Petitioner raised the claim that Jerry Armstead's out-of-court and in-court identification of Petitioner, when considering the totality of the circumstances including pre-trial publicity, violated his right to due process (Doc. # 6 at Exhibit A, p. 33-38).  This is the

14

same claim that Petitioner raises in the instant action (Doc. # 1 at 28-30).  Accordingly,

the Court finds and concludes that Petitioner's entire fourth claim was fairly presented in

state court and will address the merits of this claim.

> In examining this claim, the appellate court found that:

> The trial court concluded that the photographic array was not unduly
> suggestive.  Before presenting the arrays, police officers read a
> photographic admonition and told the witnesses that the arrays may or
> may not include the suspect.  The photographs depicted individuals who
> had similar hairstyles and facial hair.  There were a sufficient number of
> photographs in the array.  The photographs had similar backgrounds, and
> the photograph of defendant did not stand out from the others so as to
> suggest that defendant was more likely the suspect.  After reviewing the
> array, we find substantial evidence to support the trial court's findings and
> conclusion.  See Bernal v. People, 44 P.3d 184, 190-92 (Colo. 2002).

(Doc. # 6 at Exhibit D, p. 7).

When the constitutionality of a photographic array is challenged, the Due

Process Clause mandates a two-pronged inquiry: first, the court must determine

whether the array was impermissibly suggestive, and if so, second, the court must

determine whether the identifications were nevertheless reliable in view of the totality of

the circumstances.  *See Simmons v. United States*, 390 U.S. 377, 384 (1968);

*Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir. 1987).  These two prongs must be

analyzed separately, and the court need only reach the second prong of the test if it

first determines that the array was impermissibly suggestive.  *Johnston*, 823 F.2d at

391.  Finally, the constitutionality of identification procedures is a mixed question of law

and fact.  *Archuleta v. Kerby*, 864 F.2d 709, 710 (10th Cir. 1989).

Accordingly, the Court must first determine whether the photographic array used

to identify Petitioner was impermissibly suggestive.  In *Simmons*, the Supreme Court

held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384. To determine whether a pretrial identification was impermissibly suggestive, "courts use a number of factors . . ., including the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves." *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994) (citation omitted). Finally, where an eyewitness's pretrial photographic identification was not impermissibly suggestive, the admission of his in-court identification of the defendant does not violate the defendant's right to due process. *See, e.g., Romero v. Tansy*, 46 F.3d 1024, 1032 (10th Cir. 1995).

Petitioner argues that the victim's brother, Jerry Armstead, "indicated that [he was] unable to identify [Petitioner] with any reasonable degree of certainty but nevertheless still identified him." (Doc. # 1 at 28). He further argues that the "size of the photo array, the manner of presentation and details were inappropriate." *Id.* at 30.

A hearing on Petitioner's motion to suppress Mr. Armstead's out-of-court identification of Petitioner, as well as any in-court identification, was held on January 10, 2003. At the hearing, Detective Sean Mandel testified that he compiled a photographic line-up with six pictures, including a picture of Petitioner, and showed that array to Mr. Armstead (Trial Court Transcript, Vol. 14 at 46-49). Detective Mandel then testified as follows:

A.      [Mr. Armstead] looked at the photographic line-up, took approximately ten seconds or so examining the photographic line-up, and then picked out Mr. Woodard.

16

> Q.     And did he say anything about his level of confidence of what
>         occurred there?
> A.     Yes, he said he was positive that was the individual that was
>         involved.

*Id.* at 49.  Petitioner's counsel then asked Detective Mandel if Mr. Armstead had actually

stated he was "positive" that Petitioner was the correct suspect.  *Id.*  Detective Mandel

admitted it was possible that Mr. Armstead had not used those exact words, but

reiterated that Mr. Armstead had "no doubt in his mind" about his identification of

Petitioner.  *Id.* at 50.  Considering Detective Mandel's testimony, and having reviewed

the entire transcript from the suppression hearing, the Court can find no support in the

record for Petitioner's contention that Mr. Armstead was unable to identify Petitioner

"with any reasonable degree of certainty but nevertheless still identified him."  (Doc. # 1

at 28).  Instead, it appears that Mr. Armstead quickly identified Petitioner and then

indicated that he had "no doubt" as to this identification (Trial Court Transcript, Vol. 14

at 50).

With regard to Petitioner's argument that the size, manner and details of the

photo array were inappropriate, the Court finds no support for these claims in the

record.  Petitioner's photo array consisted of six photographs, and "courts have held

that a photo array with as few as six pictures is not *per se* unconstitutional."  *Sanchez*,

24 F.3d at 1262 (collecting cases).  Instead, as the Tenth Circuit noted in *Sanchez*,

> [T]he number of photographs in an array is not itself a substantive factor,
> but instead is a factor that merely affects the *weight* given to other alleged
> problems or irregularities in an array.  The larger the number of pictures
> used in an array, the less likely it is that a minor difference, such as
> background color or texture, will have a prejudicial effect on selection.

*Id.* (emphasis in original).  Therefore, instead of focusing on the number of photographs

used in the array, the Court must focus on the details of the photographs themselves.

*Id.*  While those photographs are not currently before this Court, the state court

examined the actual array used in Petitioner's case and found the following:

> In this case, the Court is satisfied that the photographic array that was presented and the manner in which it was provided to the witnesses was in no way suggestive.

> There are six photographs - - and, actually 18 total, although six photographs were in the array containing Mr. Woodard.  I'm satisfied that that is a sufficient number of photographs under the circumstances to give the witnesses a fair opportunity to make a determination.

> Secondly, in each case, with both witnesses, Mr. Armstead and Mr. Armstrong, the police officers testified that they had read the admonition prior to the witnesses viewing the line-up.

> The officers made no comment as to whether the witness had picked the correct person, and there is no other evidence of any kind of suggestive conduct at all on the part of the police officers.  So the size and manner of presentation certainly satisfy <u>Bernal</u>.

> Looking finely [sic] at the six photographs - - while there are some differences between the appearance of the individuals, the Court is again satisfied that there is sufficient similarity to give the witness a fair opportunity to identify the individuals.
> . . . .

> All the individuals have sufficiently similar hairstyles and hair length. The backgrounds are similar in each of the circumstances, and there is absolutely nothing in the photographic array that would point the witness to any particular individual.

(Trial Court Transcript, Vol. 14 at 97-99).

"[D]eterminations of a factual issue made by a State Court shall be presumed to

be correct," unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*see also Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir. 2000) (noting that the

"subsidiary factual findings made by the state court are entitled to a presumption of

correctness").  Here, Petitioner has presented no "clear and convincing evidence" to

rebut the finding of the state court that there was "absolutely nothing in the photographic

array that would point" Mr. Armstead towards accusing Petitioner (Trial Court Transcript,

Vol. 14 at 99).  Instead, without providing specific details or facts to the Court, Petitioner

merely asserts that "pre-trial publicity" tainted the photographic array (Doc. # 1 at 32-

33).  However, Detective Mandel testified that Mr. Armstead's examination of the

photographic array and subsequent identification of Petitioner took place approximately

five-and-a-half to six hours after the actual shooting occurred (Trial Court Transcript,

Vol. 14 at 61).  He further testified that Mr. Armstead arrived at the Police Operations

Center for purposes of identifying the perpetrators at approximately 8:30 p.m., and that

the shooting occurred at approximately 6:00 p.m., leaving about two-and-a-half hours

during which Mr. Armstead could have potentially viewed any media coverage of the

incident.  *Id.* at 60.  The Court finds it extremely unlikely that "vast media coverage that

presented pictures of [Petitioner] in the papers and TV news" occurred during this brief

window of time between the shooting and Mr. Armstead's arrival at the Police

Operations Center (Doc. # 1 at 29).  Moreover, Petitioner has provided nothing other

than conclusory, unsupported allegations to bolster this theory.  *Id.* at 28-33.  Petitioner

has not demonstrated that the photographic identification procedure in his case "was so

impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification."  *Simmons* 390 U.S. at 384.

Because the Court finds that the out-of-court identification was not impermissibly

suggestive, Petitioner's argument that Mr. Armstead's in-court identification of him was

tainted is also without merit.  That is, where an eyewitness's pretrial photographic

19

identification was not impermissibly suggestive, the admission of his in-court

identification of the defendant does not violate the defendant's right to due process.

*Romero*, 46 F.3d at 1032.  Further, Petitioner again provides nothing other than

unsupported, conclusory allegations to bolster his claim that pre-trial publicity somehow

tainted his in-court identification by Mr. Armstead (Doc. # 1 at 28-33).  Accordingly, the

Court finds and concludes that the CCA's decision was not contrary to or an

unreasonable application of the *Simmons* standard, and the decision was not based on

an unreasonable determination of the facts in light of the evidence presented.

Therefore, Petitioner is not entitled to habeas relief on this claim.

     3.   The Merits of Petitioner's Remaining Claims

        a.   Claim One

In his first claim, Petitioner asserts that the trial court erred by refusing to tender

his requested lesser included instructions to the jury, including but not limited to, the

instruction on the doctrine of no-retreat (Doc. # 1 at 5).  Relying on doctrines of state

law, the appellate court found that the jury instructions were appropriately given, and

that the state court did not abuse its discretion in refusing Petitioner's requested

instructions (Doc. # 6 at Exhibit D, p. 3-4).

The Supreme Court has never recognized a federal constitutional right to a

lesser included offense instruction in non-capital cases, *see Beck v. Alabama*, 447 U.S.

625, 638 n. 14 (1980), and neither has the Tenth Circuit, *see Dockins v. Hines*, 374

F.3d 935, 938 (10th Cir. 2004).  In fact, Tenth Circuit precedent "establish[es] a rule of

'automatic non-reviewability' for claims based on a state court's failure, in a non-capital

case, to give a lesser included offense instruction."  *Dockins*, 374 F.3d at 938 (citing

*Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)).

Although Petitioner asserts that the cases cited above do not address his "claim of a substantive due process (Fifth Amendment) violation regarding the presentation of lesser included offense instructions in a non-capital case," (Doc. # 10 at 2), this argument is incorrect.  Petitioner argues that *Dockins* "only addresses this issue in terms of a Sixth and Fourteenth Amendment violation," while Petitioner apparently believes that his claim presents only a violation of the Fifth Amendment.  *Id.*  However, as Respondents point out, the Due Process Clause of the Fifth Amendment applies to the States by and through the Fourteenth Amendment, requiring that any due process claim brought by a state prisoner, whether substantive or procedural, be founded on the Fourteenth Amendment.  *See, e.g., Estelle*, 502 U.S. at 62; *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).  Accordingly, Petitioner is incorrect both in asserting that his claim is founded solely on the Fifth Amendment, and that his claim can somehow be distinguished from the claim presented in *Dockins.*  Indeed, *Dockins* squarely addressed the issue of whether a state court "improperly refused defense counsel's request for a jury instruction on the lesser included offense of breaking and entering," and unambiguously found that such a claim was subject to a rule of "automatic non-reviewability."  374 F.3d at 938.  Further, Petitioner asserts that in *Beck*, the Supreme Court found that a "defendant is entitled to an instruction on a lesser included offense if the evidence would permit the jury rationally to find him guilty of the lesser offense and acquit him of the greater." (Doc. # 18 at 2).  While this is true, Petitioner fails to recognize that the Supreme Court's holding in *Beck* was exclusively limited to defendants facing capital punishment.  *See Beck*, 447 U.S. at 638 n.14 (noting "[w]e

21

need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case."). Accordingly, the Court finds and concludes that the CCA's decision was not contrary to or an unreasonable application of the *Beck* standard and that Petitioner is not entitled to habeas relief on this claim.

b. Claim Five

In his fifth claim, Petitioner asserts that the "cumulative effect of errors in his case deprived him of a fair trial." (Doc. # 1 at 33).

The CCA disagreed with Petitioner's contention that cumulative error denied him the right to a fair trial, finding that "[b]ecause the alleged errors did not, singly or cumulatively, deprive defendant of a fair trial, he is not entitled to reversal on a theory of cumulative error." (Doc. # 6 at Exhibit D, p. 7-8) (citation omitted).

This Court must defer to the CCA's ruling "unless it constituted an unreasonable application of the cumulative-error doctrine." *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005). "Cumulative error analysis is an extension of harmless error and conduct[s] the same inquiry as for individual error, focusing on the underlying fairness of the trial." *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003) (internal quotation marks and citation omitted). "Cumulative error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Welch v. Sirmons*, 451 F.3d 675, 710 (10th Cir. 2006) (internal quotation marks and citation omitted). However, cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors. *Moore v. Reynolds*, 153 F.3d

1086, 1115 (10th Cir. 1998). The Court evaluates whether cumulative errors were harmless by determining whether a criminal defendant's substantial rights were affected. *Id.* Having reviewed the entire record, the Court finds and concludes that the CCA's ruling did not constitute an unreasonable application of the cumulative-error doctrine, nor was it an unreasonable determinations of the facts presented in the state court proceeding. Accordingly, the Court finds that Petitioner is not entitled to federal habeas relief on this claim, and it must be dismissed.

Accordingly, it is ordered:

1. Petitioner Corey Woodard's Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Doc. # 1) is denied.

2. This case is dismissed with prejudice.

DATED: July 27, 2009.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge